UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR LEE KLAINS,

    Plaintiff,                                        Civil Action No. 10-12864
v.                                                 HON. PATRICK J. DUGGAN
                                                     U.S. District Judge
COMMISSIONER OF SOCIAL             HON. R. STEVEN WHALEN
SECURITY,                                       U.S. Magistrate Judge

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Arthur Lee Klains brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## **PROCEDURAL HISTORY**

On April 11, and April 13, 2006 respectively, Plaintiff filed applications for SSI and DIB, alleging an onset of disability date of March 1, 2005 (Tr. 126-128, 129-131). After the initial denial of the claims, Plaintiff filed a request for an administrative hearing, held on February 5, 2009 in Chicago, Illinois before Administrative Law Judge ("ALJ") Ayrie Moore (Tr. 28). Plaintiff, represented by attorney Mikel Lupisella, testified by teleconference from Flint, Michigan (Tr. 33-54). Vocational Expert ("VE") Pamela Tucker also testified (Tr. 54-59). On April 28, 2009, ALJ Moore found Plaintiff capable of performing his past relevant work as a janitor as well as significant

range of other work at the same exertional level (Tr. 19-20). On May 17, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on July 20, 2010.

## BACKGROUND FACTS

Plaintiff, born June 24, 1956, was 52 when the ALJ issued her decision (Tr. 20, 126). He completed eleventh grade and worked previously as a janitor (Tr. 162, 166). His application for benefits alleges disability as a result of arthritis and Hepatitis C (Tr. 161).

### A.     Plaintiff's Testimony

Plaintiff testified that he currently lived with a friend in an apartment (Tr. 34). Plaintiff, right handed, reported that he lost his driver's license after receiving a DUI in 2008 (Tr. 34). He indicated that he took additional classes after leaving school in eleventh grade, but had not obtained his GED (Tr. 35). He stated that he last performed substantial gainful employment ("SGE") in 2005 (Tr. 36). He alleged that lower back pain, joint swelling, and hand cramps prevented him from working (Tr. 36, 39). He also alleged arm and hand stiffness, difficulty walking, hypertension, an enlarged prostate, the need for prescription lenses, and difficulty reading (Tr. 36-38). He reported that cold weather aggravated his back condition (Tr. 39). He estimated that on a scale of one to ten, he experienced level "seven" back pain (Tr. 40).

Plaintiff testified that his right hand and arm were swollen and numb but not painful (Tr. 40). He reported that the enlarged prostate obliged him to make frequent bathroom trips but that a change in medication had improved the condition (Tr. 41). He also acknowledged that since taking medication for depression he had become more "rested" (Tr. 41, 45, 48). He denied other psychiatric treatment or counseling (Tr. 43). Plaintiff reported that he had been going to physical therapy for the past three to four months and had been prescribed Motrin and muscle relaxers for

pain, but that none of his treating sources had recommended back surgery (Tr. 41-42, 44). He reported that he was able to perform a full range of household chores, perform home exercises, and take walks (Tr. 49-50).

Plaintiff estimated that he could lift up to 20 pounds, sit without limitation (assuming that he was not on a hard surface), and stand for up to 20 minutes; adding that back and circulation problems created difficulty climbing stairs (Tr. 46). He alleged difficulty reaching overhead with the right arm but denied problems using a fork or spoon (Tr. 47). He deemed himself "good" at following instructions and completing tasks (Tr. 48). He denied problems with friends, neighbors, coworkers, or supervisors (Tr. 48). Plaintiff reported that he attended church regularly, watched movies, read, played card or board games, and visited with his children in his free time (Tr. 49-51). He admitted to sporadic alcohol use but denied smoking (Tr. 52-53). He denied ever using illicit drugs (Tr. 53). He reported that he had attended AA meetings in 2008, noting that as a result, he stopped drinking altogether for approximately six months (Tr. 53).

    **B.**    **Medical Evidence**[1]

    **1. Treating Sources**

In December, 2002, imaging studies showed "early degenerative changes in the lumbar spine" but no spondylolysis (Tr. 207). June, 2003 treating notes indicate that Plaintiff experienced hypertension after discontinuing medication (Tr. 202). May, 2004 treating notes state that Plaintiff obtained relief from back pain by taking Motrin (Tr. 198). In August, 2005, Plaintiff was injured while boxing with his brother (Tr. 221). In March, 2006, Plaintiff was diagnosed with Hepatitis C (Tr. 211).

---

[1] Plaintiff sole argument for remand pertains exclusively to his psychological condition. Records concerning his physical condition are summarized here for background purposes only.

An intake psychiatric evaluation performed in January, 2009 noted that Plaintiff experienced trouble sleeping (Tr. 227). Plaintiff, denying suicidal thoughts, alleged one "manic episode" in the past (Tr. 227). He admitted using crack "20 years ago," and jail time as a result of a DUI (Tr. 227). Plaintiff was casually dressed with a constricted affect (Tr. 229). He was deemed "a bit paranoid," but denied hallucinations (Tr. 229). He was assigned a GAF of 46 and prescribed Abilify, Trileptal, and Zoloft[2] (Tr. 229).

Plaintiff commenced physical therapy in October, 2008. An intake assessment created the same month noted that x-rays of the lower back were negative for fractures (Tr. 237). Plaintiff reported that lower back pain created functional limitations but was observed to have "good" lumbar back support (Tr. 237). Plaintiff admitted that he could tolerate his pain without medication (Tr. 246). A February, 2009 medical source statement included with the physical therapy records states that Plaintiff was unable to lift more than 10 pounds or stand or walk more than two hours in an eight-hour workday (Tr. 234). Plaintiff recommenced physical therapy in March, 2009[3] (Tr. 235).

### C. Vocational Expert Testimony

VE Tucker classified Plaintiff's former job as a maintenance worker as semi-skilled at the medium exertional level[4] (Tr. 56). She testified that if Plaintiff were capable of performing a full

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[3]Transcript pages 248-339 are multiple duplicates of the records cited above.

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally

range of medium work, he could return to his past relevant work ("PRW") as a janitor (Tr. 56). In addition, the VE testified that if Plaintiff's testimony regarding depression and problems reading and writing were fully credited, he could still perform his PRW (Tr. 56). The VE testified next that if Plaintiff experienced the same limitations, but in addition, were restricted to exertionally light work, he would be incapable of performing PRW but could work as an assembler (9,000 positions in the regional economy); packer (8,000); and housekeeper (13,000) (Tr. 57).

Next, the VE testified that if Plaintiff could perform medium work but was limited to frequent (as opposed to *constant*) right hand use, he would be unable to perform his PRW (Tr. 57). The VE testified that if Plaintiff were limited to light work with the frequent use of his right hand, he would be able to perform the work of an usher (2,600); ticket taker (1,800); or parking lot attendant (2,700); adding that the assembler jobs numbers (above) would be reduced to 7,000, and packer, 3,000 (Tr. 59). She concluded that the housekeeping positions would be eliminated (Tr. 59). The VE indicated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 55).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Moore found that Plaintiff experienced the "severe" impairments of osteoarthritis, degenerative disc disease, and high blood pressure but that none of the conditions met or medically equaled an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17). The ALJ determined further that Plaintiff experienced the non-severe impairment of depression (Tr. 17).

---

*heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for medium work, limited by the need for only "minimal reading and writing" (Tr. 17). She concluded that Plaintiff could perform his PRW as a janitor (Tr. 19). Citing the VE's job findings, above, the ALJ determined that Plaintiff could also perform the jobs of assembler, packer, housekeeper, usher, ticket taker, and parking lot attendant (Tr. 19).

The ALJ discounted Plaintiff's allegations of disability, noting that objective medical evidence regarding his hand and back problems showed "mainly normal to at most mild findings" (Tr. 18). She observed that despite Plaintiff's claims of significant manipulative limitations, he was able to perform household chores, handle small objects, and play cards (Tr. 19). She also observed that he exercised, took walks, and visited his children regularly (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless

of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **The Step Two Findings**

Plaintiff argues exclusively that the ALJ erred by omitting his "mental impairments" from the Step Two findings.[5] *Plaintiff's Brief* at 6-7, *Dock. #11*. Citing the January, 2009 diagnosis of

---

[5] Plaintiff disputes the ALJ's findings only as to his alleged mental impairments. Thus, issues related to his physical conditions are deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002).

a bipolar disorder and GAF of 46, Plaintiff contends that his mental problems were more than *de minimus* and thus, ought to have been included among his "severe" impairments at Step Two. *Id.* (*citing* 229).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985). An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).

20 CFR § 416.921(a) defines a *non*-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Substantial evidence (if not a preponderance of the evidence) supports the ALJ's, deliberate exclusion of psychological limitations from the Step Two "severe" impairments. The ALJ's reasons for finding that the mental limitations were non-severe were well discussed. She observed that (1) Plaintiff had not received any psychiatric treatment until undergoing the January, 2009 evaluation, (2) his mental status examination was "fairly normal," (3) he had been prescribed medication but did not undergo any followup counseling and (4) he "did not describe or testify to any significant limitations as a result of his mental condition" (Tr. 17). I also disagree with Plaintiff's contention that the ALJ skirted consideration of evidence supporting the opposite conclusion. While the ALJ

-8-

was not required to "put stock" in the GAF score of 46, *Kornecky v. Commissioner of Social Security,* 167 Fed.Appx. 496, 511, 2006 WL 305648, 14 (6th Cir. 2006)(citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002)), she acknowledged and considered the GAF score along with the diagnosis of bi-polar disorder (Tr. 17).

In addition, faced with the lack of psychological treating records, the ALJ "went the extra mile" by questioning Plaintiff at length about work related psychological limitations. Plaintiff denied problems following instructions or completing tasks; interacting with supervisors or coworkers; or problems in social functioning (Tr. 48). He stated repeatedly that his condition improved as a result of medication prescribed at the January, 2009 evaluation (Tr. 41, 45, 48). He denied counseling (Tr. 43). While Plaintiff relies on the January, 2009 GAF suggesting "serious" psychological deficiencies, his own testimony supports the ALJ's conclusion that his condition had significantly improved between the January 6 evaluation and the February 5 hearing.

In conclusion, I caution that my findings should not be read to trivialize Plaintiff's personal or medical difficulties. Nonetheless, the ALJ's determination, well within the "zone of choice" accorded the administrative fact-finder, should remain undisturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,*

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: July 11, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on July 11, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 11, 2011: **None.**

                                                s/Michael E. Lang
                                                Deputy Clerk to
                                                Magistrate Judge R. Steven Whalen
                                                (313) 234-5217